**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

BRENT BREVARD,

                                    Plaintiff,                    9:18-cv-00042 (BKS/ML)

v.

THOMAS SCHUNK, MATTHEW GARRY,
MICHAEL GILLIGAN, ALLAN BRAY, and
ANTHONY CAMPBELL,

                                    Defendants.

_____

**Appearances:**

*For Plaintiff:*
Giancarlo Facciponte
Frank W. Miller
The Law Firm of Frank W. Miller
6575 Kirkville Road
East Syracuse, New York 13057

*For Defendants:*
Letitia James
Attorney General of the State of New York
Kyle W. Sturgess
Assistant Attorney General
Christopher Liberati-Conant
Assistant Attorney General
The Capitol
Albany, New York 12224

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiff Brent Brevard brings this action under 42 U.S.C. § 1983 against Defendants

Sergeant Thomas Schunk, and Corrections Officers ("CO") Matthew Garry, Michael Gilligan,

Allan Bray, and Anthony Campbell (collectively "Defendants"). (Dkt. No. 1). Plaintiff alleges

that Defendants violated his Eighth Amendment rights while he was an inmate at Coxsackie Correctional Facility ("Coxsackie") in Coxsackie, New York. Specifically, Plaintiff claims that he was sexually assaulted: (1) by Sergeant Schunk, CO Gilligan, and CO Garry on November 26, 2017; and (2) by Sergeant Schunk, CO Bray, and CO Campbell on November 28, 2017. (*Id.*).

Presently before the Court are the parties' motions in limine. (Dkt. Nos. 72, 55). Defendants request that they be permitted to (1) "inquire on cross-examination as to the essential facts of the Plaintiff's criminal convictions;" and (2) "question Plaintiff regarding specific portions of his disciplinary history." (Dkt. No. 72, at 2). They also request that the "facts concerning the ultimate disposition of the Plaintiff's three-day 'contraband watch' . . . be precluded from evidence." (*Id.*).[1] Plaintiff requests (1) "sanctions and preclusion . . . based on the conduct of Defendants during the discovery process;" (2) leave to amend his complaint; and (3) "preclusion of references to Plaintiff's prior irrelevant criminal convictions or alleged bad acts." (Dkt. No. 55-1, at 5).

## II.     DISCUSSION

### A.     Plaintiff's Convictions

Plaintiff seeks to preclude Defendants from introducing evidence of his criminal convictions. (Dkt. No. 55-1, at 38–40). Defendants oppose Plaintiff's motion and seek to inquire into the essential facts of Plaintiff's 2016 felony convictions on cross-examination. (Dkt. No. 72, at 3–7; Dkt. No. 87-8, at 16–17). In 2016, Plaintiff was convicted of Robbery in the First Degree, in violation of NY Penal Law § 160.15, and Criminal Possession of a Forged Instrument in the

---

[1] Defendants additionally requested that "they be permitted to inquire into the conviction histories and disciplinary histories of any inmate witnesses called by the Plaintiff." (*Id.*). However, at the pretrial conference, Plaintiff indicated he did not plan to call any inmate witnesses. As such, the Court denies as moot Defendants' motion to inquire into the conviction and disciplinary histories of inmate witnesses.

First Degree, in violation of N.Y. Penal Law § 170.30. (Dkt. No. 72, at 4). Plaintiff received an indeterminate sentence of 12 to 15 years; he remains imprisoned for these convictions. (*Id.*).

### 1. Robbery Conviction

Defendants seek to introduce Plaintiff's robbery conviction under Fed. R. Evid. 609(a)(1)(A). Rule 609(a)(1)(A) provides that, "subject to Rule 403," evidence of a prior conviction "must be admitted" to impeach a witness where the conviction was "for a crime that . . . was punishable . . . by imprisonment for more than one year." Under Rule 609(a)(1), "inquiry into the 'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed is presumptively required . . . subject to balancing under Rule 403." *United States v. Estrada*, 430 F.3d 606, 616 (2d Cir. 2005). Thus, the Court must balance the probative value of introducing evidence of Plaintiff's robbery conviction against its prejudicial effect.

First, Plaintiff's credibility is a central issue in this case because the resolution of his claims will largely turn on whether the jury credits Plaintiff's or Defendants' versions of the alleged events. *Crenshaw v. Herbert*, 409 F. App'x 428, 432 (2d Cir. 2011) (upholding the district court's decision to admit a prior robbery conviction in a § 1983 retaliation and excessive force case because "[e]vidence of [Plaintiff's] prior robbery was probative of veracity . . . a central issue in this case because the jury was required to choose between two contradictory versions of the underlying incident"). While Plaintiff contends that "Defendants [sic] recent disclosures . . . serve as circumstantial evidence of Plaintiff's claims," (Dkt. No. 82, at 7), the jury will nonetheless need to make credibility determinations about Plaintiff and Defendants in order to weigh the circumstantial evidence.

Second, while Plaintiff argues that introducing the essential facts of his 2016 robbery conviction "would only serve to allow Defendants to label Plaintiff as a violent drug addict in the eyes of the jury," the Court notes that robbery is dissimilar from the conduct at issue here. *Stephen v. Hanley*, No. 03-cv-6226, 2009 WL 1471180, at *5, 2009 U.S. Dist. LEXIS 43334, at *13 (E.D.N.Y. May 21, 2009) ("The less similar the pending case to the prior conviction, the less prejudicial its admission is."). Plaintiff cites *Holloway v. Mitchell-Oddey*, 488 F. Supp. 2d 239, 240 (N.D.N.Y. 2007), for the proposition that his conviction should be excluded. However, in *Holloway*, the court excluded evidence of the plaintiff-inmate's prior conviction for "an assault against corrections officers" as "highly prejudicial" because "there are factual similarities between that situation and the circumstances of this [excessive force] case." *Id.* The Court finds that there are few similarities between robbery and the allegations in this case, and thus less potential for unfair prejudice.

Finally, the jury already will know that Plaintiff was convicted of a crime, by the very nature of his claims against correction officers. *See Espinosa v. McCabe*, No. 10-cv-497, 2014 WL 988832, at *3–4, 2014 U.S. Dist. LEXIS 31741, at *16 (N.D.N.Y. Mar. 12, 2014). The Court thus finds that the probative value of Plaintiff's robbery conviction is not substantially outweighed by unfair prejudice. Consequently, the essential facts (the name, date, and sentence) of Plaintiff's robbery conviction is admissible for impeachment.

### 2.      Possession of a Forged Instrument Conviction

Defendants seek to introduce Plaintiff's possession of a forged instrument conviction under Fed. R. Evid. 609(a)(2), which provides that "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of a crime required proving–or the witness's admitting–a dishonest act or false statement." Evidence of a "conviction involving dishonesty or a false statement 'must be admitted, with the

trial court having no discretion'" to balance under Rule 403, unlike with Rule 609(a)(1)(A).

*Gonzalez v. Morris*, No. 14-cv-01438, 2018 WL 4471625, at *2, 2018 U.S. Dist. LEXIS 158489,

at *4 (N.D.N.Y. Sept. 18, 2018) (quoting *United States v. Bumagin*, 136 F. Supp. 3d 361, 375

(E.D.N.Y. 2015)); *see also United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1997)

("[E]vidence of conviction of a certain type of crime—one involving 'dishonesty or false

statement'—must be admitted, with the trial court having no discretion, regardless of the

seriousness of the offense or its prejudice to the defendant.").

      Under New York law, a "person is guilty of criminal possession of a forged instrument in

the first degree when, with knowledge that it is forged and with intent to defraud, deceive or

injure another, he utters or possesses any forged instrument of a kind specified in [N.Y. Penal

Law § 170.15]." N.Y. Penal Law § 170.30. A "forged instrument" in this context is "[p]art of an

issue of money, stamps securities, or other valuable instruments issued by a government or . . .

[p]art of an issue of stock, bonds, or other instruments representing interests in or claims against

a corporate or other organization." *Id.* § 170.15. "Therefore, possession of a forged instrument in

the [first] degree under New York law requires proof (or admission) of a dishonest act or false

statement, and is clearly admissible for impeachment under Rule 609(a)(2)." *Gonzalez*, 2018 WL

4471625, at *1, 2018 U.S. Dist. LEXIS 158489, at *3; *see also Boykin v. W. Express, Inc.*, No.

12-cv-7428, 2016 WL 8710481, at *7, 2016 U.S. Dist. LEXIS 14771, at *19 (S.D.N.Y. Feb. 5,

2016) ("It is clear that Plaintiff's prior conviction for [possession of a forged instrument] is a

crime involving dishonesty, which is not contested by Plaintiff, and the conviction is therefore

admissible."). Here, Plaintiff has offered no argument to rebut Defendants' assertions that his

conviction for Criminal Possession of a Forged Instrument in the First Degree is not an act that

required proof of a dishonest act. Accordingly, the essential facts of the conviction are admissible for impeachment purposes under Fed. Rule of Evid. 609(a)(2).[2]

### B. Plaintiff's Disciplinary Records

Defendants seek to cross-examine Plaintiff regarding conduct that resulted in a disciplinary conviction for "false information," pursuant to Rule 608(b). (Dkt. No. 72, at 8–9). Plaintiff seeks to exclude any evidence of disciplinary issues as prohibited "other acts" evidence under Rule 404(b)(1) or overly prejudicial under Rule 403. (Dkt. No. 55-1, at 38–40; Dkt. No. 82, at 8–10).

According to the misbehavior report and hearing packet submitted by Defendants, (Dkt. No. 83), on October 24, 2018, when Plaintiff was ordered to produce identification, he claimed he had lost it. (*Id.* at 9). "Upon the frisk and packing of [Plaintiff's] property Officers recovered two of [Plaintiff's] ID cards." (*Id.*). Plaintiff pled guilty to giving "false statements or info." (*Id.* at 8).

Defendants seek to cross-examine Plaintiff about the disciplinary conviction for false information because it is probative of his truthfulness or untruthfulness as a testifying witness. Rule 608(b) "states that the court may, on cross-examination of a witness, allow inquiry as to specific instances of conduct, 'if they are probative of the character for truthfulness or untruthfulness of . . . the witness.'" *Tapp v. Tougas*, No. 05-cv-1479, 2018 WL 1918605, at *3, 2018 U.S. Dist. LEXIS 66743, at *9 (N.D.N.Y. Apr. 20, 2018) (quoting Fed. R. Evid. 608(b)).

---

[2] The Court notes that Defendants argued that they "should be permitted to inquire into *the essential facts* of the Plaintiff's felony convictions." (Dkt. No. 72, at 3 (emphasis added)). *Estrada* described the "essential facts" as including "the nature or statutory name of each offense, its date, and the sentence imposed." 430 F.3d at 616. However, at the pretrial conference, Defendants argued that they should be able to go beyond the essential facts of Plaintiff's Criminal Possession of a Forged Instrument conviction and inquire into its underlying facts. To the extent that Defendants' motion in limine can be construed as a request to go beyond the essential facts of Plaintiff's convictions, the Court finds that any additional probative value of that evidence is substantially outweighed by unfair prejudice. *See* Fed. R. Evid. 403; *Carofino v. Forester*, No. 03-cv-6258, 2008 WL 1700194, at *4, 2008 U.S. Dist. LEXIS 30609, at *8–9 (S.D.N.Y. Apr. 7, 2008) (noting that under Rule 609(a)(2), only the essential facts must be admitted).

Rule 608(b) thus "allows a witness to be cross-examine about specific instances of conduct 'in the discretion of the court' if these are probative of his truthfulness." *United States v. Triumph Capital Grp., Inc.*, 237 F. App'x 625, 629 (2d Cir. 2007).

While a disciplinary conviction for false information may, in certain instances, relate to a witness's credibility, the Court finds the specific incident at issue here has little probative value regarding Plaintiff's truthfulness or untruthfulness. While Plaintiff stated he lost his identification, and identification was later recovered following a search of his belongings, this conduct does not necessarily suggest that Plaintiff was being untruthful and is therefore only minimally probative of Plaintiff's character for truthfulness. The Court thus grants Plaintiff's request to exclude cross-examination of this incident at trial. *See United States v. Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005) (Rule 608 "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness") (internal quotation marks and citation omitted)).

### C.      Defendants' Motion to Preclude Evidence

Defendants argue that "[p]ursuant to Rules 401 and 403, the Plaintiff should be precluded from introducing evidence concerning the ultimate outcome of the 'contraband watch' . . . with respect to the fact that no contraband was recovered from Plaintiff." (Dkt. No. 72, at 11). Plaintiff responds that "[w]hether there actually was any white object or other contraband to be found" is "very relevant to whether Defendant's conduct was justified," and thus "should be considered a fact that tends to prove Plaintiff suffered sexual assaults." (Dkt. No. 82, at 11).

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." The definition of "relevance" is thus "very broad." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014); *see also United*

*States v. Al-Moayad,* 545 F.3d 139, 176 (2d Cir. 2008) (describing relevance under Rule 401 as a "very low standard"). Nonetheless, a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

In this case, evidence that no contraband was recovered from Plaintiff is clearly relevant. Defendants claim they were justified in searching Plaintiff because he had a "white object protruding from his anus." (Dkt. No. 64, at 256). Thus, the fact that no contraband was ever found, even after Plaintiff was kept in isolation for three days, is relevant both to the Defendants' credibility and their motivation for searching Plaintiff. "A correction officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015). Thus, in order to succeed in his Eighth Amendment claim, whether Defendants had a penological interest in searching Plaintiff is relevant, and the fact that no contraband was found has a tendency to make this fact less probable. It is therefore admissible under Rule 401. Defendants argue that "the only outcome of the admission of such fact would be to prejudicially dispose the jury against the Defendants." Nonetheless, Defendants have failed to convincingly argue that the lack of contraband's probative value is *substantially* outweighed by *unfair* prejudice, as required by Rule 403. Accordingly, the Court declines to exclude this evidence.

### D. Plaintiff's Motion for Sanctions

Plaintiff asks the Court to issue sanctions under Federal Rule of Civil Procedure 37 based on recent document disclosures by Defendants. (Dkt. No. 55-1, at 35). According to Plaintiff, these late disclosures mean "Defendant[s] ha[ve] disregarded this Court's discovery order, Plaintiff's demands, and its Rule 26 obligations through its gross negligence in the discovery process." (*Id.*) Plaintiff requests the following relief: (1) "Defendant[s] be precluded from

offering any witnesses at trial save for named Defendants;" (2) "Defendant[s] be precluded from offering any evidence at trial in this case which was contained in its submittals" on December 11, 13, and 16, 2019; (3) "an adverse inference directing the trier of fact that there was no probable ca[u]se for Gilligan to search Plaintiff on November 26, 2017;" and (4) "an adverse inference directing the trier of fact that there was no reasonable basis under the operative policy to hold Plaintiff in temporary isolation through November 29, 2019." (*Id.* at 35–36).

### 1. Discovery Timeline

Plaintiff filed his Complaint on January 10, 2018. (Dkt. No. 1). On May 4, 2018, Magistrate Judge Peebles issued a Mandatory Pretrial Discovery and Scheduling Order ("MDSO") for the case. (Dkt. No. 20). This order required Defendants to "provide to [Plaintiff] copies of all documents and other materials in the care, custody, or control of any defendant or the defendant's employer . . . related to the claims or defenses in the case." (*Id*. at 2). The MDSO included Attachment A, which describes relevant documents to be turned over for different types of claims. Attachment A requires the disclosure of "relevant reports of completed investigations by a defendant's employer such as DOCCS," as well as various documents for excessive force cases, including "disciplinary charges," "determinations of disciplinary charges," "videotapes," and "medical records concerning treatment for any injuries allegedly received by the plaintiff as the result of the incident(s) alleged in the complaint." (*Id.* at 7). When Attachment A applies, "provision of the documents and materials described therein shall constitute presumptive compliance with th[e] Order." (*Id.* at 2). The MDSO also contained a "continuing duty" provision, reminding all parties that "they have a continuing duty to disclose to opposing parties any documents and information within the scope of this Order which are discovered or obtained after any initial disclosures under this Order are made." (*Id.* at 3).

On July 9, 2018, Defendants gave their mandatory disclosures to Plaintiff. (Dkt. No. 55-1, at 14; Dkt. No. 87, ¶ 8). Office of Special Investigations ("OSI") had "provided no materials [contained in the mandatory disclosures], responding by email to [defense counsel's] request that the file ('SCU/17/0545') was still open." (Dkt. No. 87, ¶ 8). On June 27, 2018, "Plaintiff issued demands for the production of documents to Defendants." (Dkt. No. 55-1, at 14). In response, Defendants made requests to both the Coxsackie IRC Office (where the events at issue took place) and the Clinton IRC Office (where Plaintiff was currently housed). (Dkt. No. 87, ¶¶ 9–10). Defendants also wrote to OSI "to inquire whether the investigative file in this case . . . was still open or whether it was available. One the same day, OSI replied by email that the file remained open." (*Id.* ¶ 12). Defendants then produced 5 additional pages of information. (Dkt. No. 55-1, at 15; Dkt. No. 87, ¶ 14).

In November 2018, defense counsel "made follow-up requests to Coxsackie CF" and "[b]ased on the facility's disclosures in response" supplemental disclosures were given to Plaintiff on November 30, and December 28, 2018. (Dkt. No. 87, ¶ 17). On December 3, 2018, Plaintiff was deposed. (*Id.*; Dkt. No. 55-1, at 15).

According to Defendants, the "Plaintiff was mailed a copy of his deposition transcript and [the deposition] Exhibits" on January 3, 2019. (Dkt. No. 87, ¶ 19). Additionally, Defendants contend that the deposition exhibits were also emailed to newly appointed pro bono counsel on or around June 25, 2019. (*Id.* ¶ 22). Defendants have attached an email which corroborates this account. (Dkt. No. 87-4, at 2). According to Plaintiff, however, the exhibits were not provided until October 23, 2019. (Dkt. No. 55-1, at 16).

On November 22, 2019, Defendants emailed Plaintiff and disclosed "previously unprovided hearing testimony transcripts from Plaintiff's misconduct hearing." (Dkt. No. 55-1,

at 16; Dkt. No. 64, at 274). "These [transcripts] were not in the initial batches of discovery materials . . . because the transcriptions had not been completed by DOCCS." (Dkt. No. 64, at 274). The email also informed Plaintiff that Defendants were "in receipt of an investigative file that was open at the time discovery closed but which now has been completed." (*Id.*). Defendants requested Plaintiffs sign a confidentiality stipulation, and Plaintiff's counsel complied. (*Id.* at 274, 280–82). Defendants sent the file to Plaintiff on December 9, 2019, (Dkt. No. 87, ¶ 23), and it was received on December 12, 2019. (Dkt. No. 55-1, at 16).

Defendants followed up with the Coxsackie IRC office and DOCCS based on information learned from OSI's report, and traveled to Coxsackie to take photographs. (Dkt. No. 87, ¶¶ 25–26). The new documents obtained, and the photographs taken, were then disclosed to Plaintiff. (*Id.*). Defendants also sent Plaintiff updated disciplinary logs and the entirety of his medical record. (*Id.* ¶ 27).

### 2.    Legal Standard

"A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). Discovery sanctions "serve a three-fold purpose: (1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the Court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general." *Grammar v. Sharinn & Lipshie, P.C.*, No. 14-cv-6774, 2016 WL 525478, at *2, 2016 U.S. Dist. LEXIS 15235, at *7 (S.D.N.Y. Feb. 8, 2016) (citing *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)). The court has "broad discretion to impose sanction as is just" including "designating certain facts be taken as established" and "refusing the disobedient party from introducing evidence." *Abreu v. City of New York*, 208 F.R.D. 526, 529 (S.D.N.Y. 2002).

"Preclusion has been called an 'extreme sanction,' and courts are obligated to 'consider less drastic responses' before precluding documentary evidence or testimony." *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 51 (S.D.N.Y. 2014) (quoting *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988)). When considering a Rule 37 motion for sanctions, courts generally consider "(1) the willfulness of or explanation for non-compliance; (2) the efficacy of lesser sanctions; (3) the duration of the non-compliance; and (4) whether there were warnings about the consequences of non-compliance." *Id.* at 52. "Prejudice to the moving party may also be a significant consideration, though not an absolute prerequisite in all circumstances." *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15-cv-3533, 2017 WL 2840279, at *11, 2017 U.S. Dist. LEXIS 102304, at *35 (S.D.N.Y. June 27, 2017) (quoting *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 129 (S.D.N.Y. 2016)).

Plaintiff generally requests sanctions pursuant to Federal Rule of Civil Procedure 37(b), (c), and (d), without specifying which rule is relevant to the sanctions requested. (Dkt. No. 55-1, at 21). Defendants argue that "Plaintiff's motion is presumably best construed as a motion pursuant to FRCP 37(d) since 37(b) requires violation of a specific order" and "37(c) requires violation of Rules 26(a) or (e)." (Dkt. No. 87-8, at 7 n.1). The Court disagrees and finds, unless otherwise noted, Plaintiff's motion is best construed as a motion under Rule 37(b). Rule 37(b) "provides comprehensively for sanctions for failure to obey discovery orders." *Shanghai Weiyi*, WL 2840279, at *9, 2017 U.S. Dist. LEXIS 102304, at *35 (quoting *8B Fed. Practice & Proc.* § 2289, at 531). Rule 37(b)(2)(A) allows courts to impose "'just' sanctions on a party who 'fails to obey an order to provide or permit discovery.'" *Id.* (quoting Fed. R. Civ. P. 37(b)(2)). "[T]he

order disobeyed can take various forms, and need not even be written." *Id.* In this case, Plaintiff is alleging that Defendants failed to comply with the MDSO, a court order.[3]

The Court also notes "[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106 (2d Cir. 2002); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" (quoting *United States v. Hudson*, 3 L.Ed. 259 (1812))).

### 3.      Non-Party Witness Preclusion

Plaintiff moves to preclude Defendants "from offering witnesses aside from the named Defendants due to [their] failure to disclose the same in [their] initial FRCP Rule 26 disclosures." (Dkt. No. 55-1, at 21). According to Plaintiff, he is "only now learning of the [non-party witnesses] existence, well outside the bounds of ability to investigate their knowledge during discovery" and this has "prejudiced his ability to gather facts from them." (*Id.* at 31).

However, as Defendants note, "pro se inmate cases do not require the service or exchange of the typical Rule 26(a) disclosures, including the identification of witnesses." (Dkt. No. 87-8, at 2). Federal Rule of Civil Procedure 26(a)(1)(B)(iv) explicitly "exempt[s] from initial disclosure[s]" actions "brought without an attorney by a person in the custody of the United States, a state, or a state subdivision," such as this case. As such, Defendants' initial discovery duties in this case were dictated by the MDSO. The MDSO directed Defendants to provide "all

---

[3] The Court notes that for documents that Defendants failed to produce in response to Plaintiff's discovery demands, Rule 37(d), rather than (b), is at issue.

documents and other materials . . . related to the claims or defenses in the case," but did not

require the identification of witnesses. (Dkt. No. 20, at 2). Though "Fed. R. Civ. P. 37(c)(1)

permits the Court to preclude witnesses if a party fails to identify a witness if they are required to

do so under [Rule 26] (a) or (e) . . . this case was exempt from the directives of rule 26(a)."

*Pettiford v. C.O. Michael Hosmer*, No. 13-cv-436, 2016 WL 4987600, at *2, 2016 U.S. Dist.

LEXIS 127449, at *6 (W.D.N.Y. Sept. 19, 2016) (holding that the defendants were not required

to initially disclose witnesses in a § 1983 claim by a pro se inmate); *see also Collazo v. Pagano*,

No. 06-cv-941, 2009 WL 3030143, at *9, 2009 U.S. Dist. LEXIS 84595, at *4 (N.D.N.Y. Sept.

16, 2009) (stating that in a § 1983 case brought by a pro se inmate "defendants were not required

to comply with the [witness] disclosure requirements of Rule 26") *aff'd*, 656 F.3d 131 (2d Cir.

2011). Accordingly, the Court denies Plaintiffs request to preclude Defendants' non-party

witnesses.[4]

### 4.     Document Preclusion

Plaintiff also moves that "Defendant[s] be precluded from offering any evidence at trial

in this case which was contained in its submittals to [Plaintiff] on December 11,[5] 2019,

December 13, 2019, or December 16, 2019." (Dkt. No. 55-1, at 36). In order to determine

whether evidence preclusion is appropriate for any of the documents Defendants disclosed in

December 2019, the Court analyzes different categories of documents.

---

[4] The Court further notes that Plaintiff was aware that many of these witnesses might have relevant information, because he either mentioned them in his deposition or their names appear in timely discovery documents. (Dkt. No. 87-8, at 3–4). For those witnesses that Plaintiff was not aware of, at the pretrial conference, Defendants made a proffer of what the witnesses would testify to. Additionally, Defendants indicated that one of the witnesses, Sergeant Slaven, will be deposed before trial.

[5] Elsewhere in his motion, Plaintiff refers to receiving the submittal on December 12, 2019. (Dkt. No. 55-1, at 16). The Court will construe the request to exclude the "December 11, 2019" and "December 13, 2019" submittals to include those purportedly received on December 12, 2019.

### a. Documents generated by OSI

OSI interviewed relevant witnesses and generated documents in the course of its investigation. This information was turned over to Plaintiff as part of the December 12, 2019 disclosure of the OSI case file. (Dkt. No. 55-1, at 16–17; Dkt. No. 87, ¶ 23). The OSI-generated information contained statements made to OSI in the course of investigation, including a signed statement by Plaintiff, (Dkt. No. 64, at 108–09), statements by Defendants, (*id.* at 163–182), and statements by alleged third-party fact witnesses. (*Id.* at 183–84, 190–197). It also included a "Cases and Complaints Tracker" OSI generated to track progress on the investigation. (Dkt. No. 64, at 63–65).

Plaintiff contends that these documents should have been turned over on a continuing basis as they were created by OSI. According to Plaintiff, this is because "Defendants' obligation to disclose relevant information as it is obtained should have been considered to extend to those items created during the course of the OSI investigation, which they knew was taking place." (Dkt. No. 55-1, at 26). Plaintiff therefore argues that because Defendants "completely failed to demand such documents be provided in compliance with Court ordered discovery," these documents should be precluded from trial. (*Id.*).

The Court disagrees. The MDSO required that "relevant reports of *completed* investigations by a defendant's employer such as DOCCS" be disclosed. (Dkt. No. 20, at 7 (emphasis added)). For excessive force/sexual assault cases, the disclosure of completed reports (as well as the other documents and materials laid out in Schedule A) "shall constitute presumptive compliance with this Order." (*Id.* at 2). Given this presumption, Defendants were not required to demand and disclose materials created by OSI while their investigation was ongoing. Rather, because of the "continuing duty" provision, Defendants had a duty to supplement their disclosures with the OSI report once it was completed. (Dkt. No. 20, at 3).

Defendants emailed OSI on at least five different occasions and were informed that the investigation was still ongoing, (Dkt. No. 87, ¶¶ 8, 12, 17, 21, 23), demonstrating Defendants' efforts to comply with the MDSO. Accordingly, the Court finds that Defendants did not violate discovery in failing to gain access to and disclose documents that were created by OSI in the course of its investigation.[6] Thus no sanctions are appropriate.

### b.    Other documents contained in the OSI case file

In addition to materials created by OSI in the course of its investigation, the OSI case filed also contained documents provided to it by DOCCS that were relevant to the investigation. Plaintiff argues that because DOCCS was aware of these documents and their relevance to the case, as evidenced by their disclosure to OSI, they should have been disclosed in this case. (Dkt. No. 55-1, at 25). Plaintiff thus contends that Defendants were grossly negligent in failing to disclose these relevant documents and that they should be precluded from introducing them at trial. (*Id.* at 26–30).

### i.    Documents already disclosed

As an initial matter, some of the documents contained in the OSI case file had already been disclosed to Plaintiff. (Dkt. No. 87, ¶ 23). These include "November 26–29, 2017 contraband watch logbooks,[7] [a] November 27, 2017 MBR; and medical records relating to the

---

[6] The Court notes also that, in any event, sanctions are not appropriate because Defendants actions were "substantially justified." *See Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 175 (S.D.N.Y. 2013) ("A party may 'defend non-disclosure on the basis that it was substantially justified or harmless." (quoting *U.S. Licensing Assocs., Inc. v. Rob Nelson Co.*, No. 11–cv–4517, 2012 WL 1447165, at *5, 2012 U.S. Dist. LEXIS 58712, at *17 (S.D.N.Y. Apr. 26, 2012)). Substantial justification is defined as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (internal quotation marks omitted). Here, given the presumption of compliance that attached when "relevant reports of completed investigations" were disclosed, the Court finds that Defendants were substantially justified in their belief that they were not required to gain access to documents created by OSI while its investigation was ongoing.

[7] The Court notes that the December 12, 2019 disclosures contained a page from the contraband watch log book that had not been previously disclosed. (Dkt. No. 64, at 54; Dkt. No. 55-1, at 16–17). The Court analyzes this page separately *infra* Section II.F.4.f.

Plaintiff's December 12, 2017 examination and subsequent medical evaluations." (*Id.*).

Accordingly, given that Plaintiff has failed to show a discovery violation relating to these

documents, sanctions are inappropriate.

### ii.     Documents related to Novoa

The OSI file contained several documents related to Elizabeth Novoa, a social worker at

Coxsackie whom Plaintiff reported his alleged assaults to shortly after they occurred. (Dkt. No.

55-1, at 11). Specifically, the OSI filed contained (1) an internal memorandum by Novoa

regarding what Plaintiff had relayed to her about what occurred, (Dkt. No. 64, at 102); (2) emails

between Novoa and OSI regarding a discrepancy in the date of her memo, (*id.* at 259); and (3)

emails indicating Novoa may have received counseling because she failed to report Plaintiff's

sexual assault. (*Id*. at 267–72).

Plaintiff argues that Defendants were required to disclose these documents, and

preclusion is warranted because "Novoa's misconduct is relevant, as Plaintiff's claims and

damages are in part based on the fact that the natural consequences of Defendants' actions

caused him to be subject to further maltreatment at Coxsackie." (Dkt. No. 55-1, at 30).

Defendants, on the other hand, contend that Plaintiff has failed "to describe how he was

prejudiced by the late disclosures" because Defendants do not dispute that "Plaintiff made a

report to [Novoa]." (Dkt. No. 87-8, at 11 n.3).

It does not appear as though Plaintiff requested any documentation related to his meeting

with Novoa in December 2017. (Dkt. No. 64, at 29–49). Thus, in order for Defendants' failure to

disclose these documents to have violated discovery, they would need to fall within the purview

of the MDSO. Given the presumption of compliance with the MDSO that attached when

Defendants disclosed the documents set forth in Attachment A, the Court finds that Defendants

were not required by the MDSO to seek out documents related to Novoa. As such, their late

disclosure in the OSI case file did not constitute a discovery abuse. Additionally, even if Defendants were required to locate and disclose these materials, the Court agrees with Defendants that Plaintiff has failed to allege that he would be prejudiced in preparing to address these documents at trial.

### iii.    Memo from Defendant Schunk

On December 28, 2017, Schunk wrote a memo to Captain Martin detailing his interactions with Plaintiff on November 26–27, 2017. (Dkt. No. 64, at 255). This memo was not disclosed to Plaintiff until the OSI report disclosures on December 12, 2019.

As an initial matter, as discussed *supra* Section II.D.4.a, the MDSO does not necessarily cover this memo. Nonetheless, it is arguable that the memo could be considered an "incident report," in which case Defendants were required to disclose it. Assuming a discovery violation occurred, the Court must analyze whether preclusion is appropriate.

In this case, Defendants appear to have made a good faith effort to comply with the MDSO given their various requests to Coxackie, Clinton, and OSI related to the initial disclosures. (Dkt. No. 87, ¶ 7). The Court recognizes that it would have been prudent for Defendants to request any documentation of the alleged incidents. Nonetheless, precluding Schunk's memo would be an "extreme sanction," and, at Plaintiff's request, the Court has continued the trial date to, *inter alia*, provide Plaintiff additional time to prepare his case. (Dkt. Nos. 90, 91). Accordingly, the Court declines to preclude Schunk's memo as a sanction.

### i.    Other Documents

There were other documents compiled by OSI but not previously disclosed to Plaintiff, including a signed statement by Plaintiff, (Dkt. No. 64, at 100–01), internal emails, (*id.* at 99), Plaintiff's pedigree and charge information, (*id.* at 79–98), his referral to mental health, (*id.* at 152), and duty assignment logs. (*Id.* at 249–54). At the pretrial conference, Defendants indicated

that they do not seek to admit Plaintiff's pedigree,[8] referral to mental health, or the duty assignment logs. Thus, the Court need not decide whether preclusion is appropriate. For the remaining documents, Plaintiff has not alleged specific reasons why the failure to disclose these documents was a violation of discovery. Furthermore, even assuming a violation occurred, on this record Plaintiff has failed to show that the violation was willful and failed to make a sufficient showing of prejudice.

### c. November 26 Misbehavior Report and Disposition

On November 26, 2017, the date of the first alleged assault, Schunk issued a misbehavior report ("MBR"), which documented Plaintiff's alleged refusal of a direct order and refusal to be searched or frisked. (Dkt. No. 64, at 256). Plaintiff requested the MBR and referenced it in his deposition. (Dkt. No. 87, ¶¶ 9, 20). In response to Plaintiff's document demand, Defendants sent a request to both the Coxsackie and Clinton IRC Offices requesting the MBR. (*Id.* ¶¶ 9–10). Clinton indicated "the facility had no records of . . . any November 26, 2017 MBR from Sergeant Schunk." (*Id.* ¶ 10). Once defense counsel became aware of the MBR after it was disclosed with the OSI file, he used the ticket information to follow up with Coxsackie IRC, who "was able to retrieve a two-page communication between that facility's Disciplinary Office and DOCCS' Office of Special Housing, indicating that the ticket had apparently been administratively dismissed" due to "an untimely hearing extension request by the assigned hearing officer." (*Id.* ¶ 25). This information was then given to Plaintiff. (*Id.*).

The failure to locate and disclose the November 26 MBR by Schunk is a discovery violation. However, the Court does not find this violation willful. *See Tri-Cty. Motors, Inc. v.*

---

[8] Defendants indicated they would not seek to introduce Plaintiff's pedigree or charge information, other than his false information charge. The Court discusses the admissibility of this charge *supra* Section II.B.

*Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007) (declining to impose sanctions where there was no evidence of bad faith, willful misconduct, or gross negligence) *aff'd*, 301 F. App'x 11 (2d Cir. 2008). Defense counsel made multiple attempts to locate the MBR. (*Id.* ¶¶ 9–10). Once it was uncovered, he was able to use the information from the OSI report to follow up on the disposition of the MBR, and the information he uncovered was disclosed to Plaintiff. While Plaintiff argues he was "deprived of the discovery opportunities to investigate why this complaint was dismissed, who had knowledge of its dismissal, and what the effect of its dismissal should have had on his extended stay," (Dkt. No. 55-1, at 32), and was therefore prejudiced by its late disclosure, the Court has continued the trial date at Plaintiff's request, and does not find the prejudice to Plaintiff severe enough to warrant the "extreme sanction" of preclusion. The Court therefore declines to preclude these documents.

### d.      Disciplinary Hearing Transcripts

On November 22, 2019, Defendants "disclosed previously unprovided hearing testimony transcripts from Plaintiff's misconduct hearing in connection with events that took place during his temporary isolation." (Dkt. No. 55-1, at 16). According to the email, "[t]hese [transcripts] were not in the initial batches of discovery materials . . . because the transcriptions had not been completed by DOCCS." (Dkt. No. 64, at 274). Plaintiff has not adduced any evidence that the transcripts were untimely withheld, nor has he made any argument as to why he was prejudiced by the late receipt of the transcripts. As such, the Court declines to preclude the hearing transcripts.

### e.      Photographs

On December 6, 2019, defense counsel visited Coxsackie and "directed the taking of a series of photograph of the RMU and contraband-watch areas of the facility for potential use as demonstrative exhibits at trial." (Dkt. No. 87, ¶ 26). These photographs were given to Plaintiff on

December 16, 2019. (Dkt. No. 55-1, at 28). Plaintiff argues that "there is no reason why these photographs were just provided" and this was a "clear violation of Defendants' obligation under the Courts' discovery order and Rule 26, as actions should have been conduced within the discovery period prior to December 10, 2018." (*Id.*).

The Court disagrees. As Defendants state, "the photographs in question . . . could not have been produced during the course of normal discovery because they did not exist, and no obligation attached to the Defendants (or to the third-party agency DOCCS) to make photographs." (Dkt. No. 87-8, at 5). Sanctions of any kind are therefore inappropriate.

### f. Missing logbook page

Defendants had previously disclosed contraband watch logbooks from November 26–29, 2017 to Plaintiff. (Dkt. No. 87, ¶ 17). However, both the version disclosed to Plaintiff and the version in the OSI file "appeared to lack a full page for November 26, 2017." (*Id.* ¶ 24). After noting that the OSI file's logbooks were also incomplete, defense counsel "followed up with the Coxsackie IRC office" and "DOCCS subsequently found and disclosed a two-page logbook segment (one page of which was previously disclosed [to Plaintiff])." (*Id.*) Defendants then disclosed the missing page to Plaintiff. (*Id.*).

According to Plaintiff, the late disclosure of this page (which he had requested during discovery) prejudices him because it provides new information about potential people who may have witnessed his sexual assault. (Dkt. No. 55-1, at 31). The Court acknowledges the relevancy of the logbook, and notes that its disclosure comes "well outside the bounds of his ability to investigate [the potential witnesses'] knowledge." (*Id.*). However, the Court has granted Plaintiff's request for a continuance of the trial date. (Dkt. No. 77, at 1). Given the absence of any indication of bad faith and that preclusion is an extreme sanction, the Court declines to preclude the logbook page.

### 5. Adverse inferences

Plaintiff moves for two adverse inference instructions to be issued: (1) "there was no probable ca[u]se for Gilligan to search Plaintiff on November 26, 2017," and (2) "there was no reasonable basis under the operative policy to hold Plaintiff in temporary isolation through November 29, 2017." (Dkt. No. 55-1, at 35).

When "an adverse inference instruction is sought on the basis that the evidence was not produced in time for use at trial," the party seeking the instruction "must show (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a 'culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense." *Residential Funding*, 306 F.3d at 107.

Plaintiff contends that these inferences are warranted by Defendants failure to disclose several key pieces of evidence. First, Plaintiff contends that he was "prejudiced by never receiving any sort of response to his specific discovery demand for the video" from the restroom on November 26, 2017. (Dkt. No. 55-1, at 34). Second, Plaintiff argues that he "was harmed and prejudiced through Defendants failure to produce any sort of medical records which evidence his fecal matter tested positive for contraband." (*Id.* at 34).

However, as Defendants argue, "[their] duty is not to explain to the Plaintiff why certain materials do or do not exist, but rather to exercise reasonable diligence to locate and identify documents and materials in their possession." (Dkt. No. 87-8, at 6). After inquiring about potential video evidence Defendants were "advised by DOCCS that inmate restroom video is not recorded." (Dkt. No. 87, ¶ 36). There is no indication that the video or medical record were destroyed, or that Defendants failed in their diligence to locate them. As such, there was no discovery violation, and there is no basis for issuing adverse inference instructions.

### E.     Plaintiff's Motion to Amend

Plaintiff moves to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) to add two new claims: (1) that he was "subject to cruel and unusual punishment in violation of his Eighth Amendment Rights through the conditions of his confinement on November 26 through 29, 2017" and (2) he was "subject to multiple unreasonable searches in violation of his Fourth Amendment rights on November 26 through 29, 2017." (Dkt. No. 55-1, at 36). Defendants contend amendment should not be allowed because they "would be prejudiced by the addition of new and discrete claims . . . at this stage of the litigation." (Dkt. No. 87-8, at 13).

Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." In the Second Circuit, "leave to amend should be given 'absent evidence of undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Kleeberg v. Eber*, 331 F.R.D. 302, 314 (S.D.N.Y. 2019) (quoting *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000)).

However, when "there is a scheduling order in place that establishes a deadline for seeking leave to amend," the "'lenient standard under 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.'" *Id*. (quoting *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks and citation omitted)). Rule 16(b) of the Federal Rules of Civil Procedure allows a schedule order to be modified "only for good cause and with the judge's consent." "Whether good cause exists turns on the 'diligence of the moving party.'" *Holmes*, 568 F.3d at 334 (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2003)). "A party fails to show good cause when the proposed

amendment rests on information 'that the party knew, or should have known, in advance of the deadline.'" *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05–cv–3749, 2009 WL 2524611, at *8, 2009 U.S. Dist. LEXIS 72659, at *24 (S.D.N.Y. Aug. 14, 2009) (collecting cases)).

"If the moving party demonstrates diligence under Rule 16, the court then applies Rule 15(a) to determine whether the amendment is otherwise proper." *Kleeberg*, 331 F.R.D. at 314. It is "within the sound discretion of the district court to grant or deny leave to amend" based on "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). In evaluating delay, courts can consider "whether a trial date has been set, whether discovery has ended, and whether dispositive motions were already filed." *Kleeberg*, 331 F.R.D. at 314. In evaluating prejudice, courts look "whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). Undue prejudice also arises "when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" *Id.* (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).

In this case, a scheduling order was issued on May 4, 2018, setting September 6, 2018 as the deadline to amend pleadings. (Dkt. No. 20, at 4). Over a year later, on December 30, 2019, Plaintiff moved to amend his pleadings to add two new claims. (Dkt. No. 55-1, at 36). The Court thus must assess whether Plaintiff had "good cause" for this delay, and if so, whether amendment

should be granted pursuant to rule 15(a) of the Federal Rules of Civil Procedure. *See Kleeberg*, 331 F.R.D. at 313–314.

Plaintiff contends the proposed amendments are based on "the facts now known" after Defendants' supplementary discovery production on December 12, 2019. (Dkt. No. 55-1, at 16, 35). According to Plaintiff, there was good cause for the delay because it was caused by "Defendant's [sic] actions in failing to comply with discovery and borne out of Plaintiff's pro se status." (*Id.* at 37). Defendants, on the other hand, contend that good cause for the delay does not exist because "Plaintiff asserts in general terms that there are known facts and circumstances that justify amendment, but declines to identify what they are, or why those particular facts and circumstances could not have been known to the Plaintiff at any earlier date." (Dkt. No. 87-7, at 15).

The Court agrees with Defendants. While the Plaintiff alleges that there are "facts now known" based on Defendants' recent disclosures, he does not specify what these facts are and how they relate to his proposed claims. At the time he filed the Complaint, Plaintiff was aware that he was searched even though he did not have contraband on November 26, 2017, and then confined for three days in "harsh conditions." (Dkt. No. 1, at 4–6). When the Court conducted a sufficiency review of the Complaint, pursuant to 28 U.S.C. § 1915, it dismissed his conditions of confinement claim without prejudice for failure to state a claim. (Dkt. No. 8, at 11). Plaintiff has thus not shown good cause for the delay, because he did not demonstrate diligence in amending his complaint before the scheduling order deadline elapsed. The proposed new claims rest information that Plaintiff knew in advance of the deadline. *See Perfect Pearl*, 889 F. Supp. 2d at 457.

The Court also notes that permitting amendment at this point would unduly prejudice Defendants. These new claims come "on the eve of trial and would result in new problems of proof." *Ruotolo*, 514 F.3d at 192 (quoting *Fluor*, 654 F.2d at 856).

Plaintiff's assertions that Defendants are not unduly prejudiced because they "have the ability to swiftly formulate a defense" and "these claims should not be surprising to Defendant[s]" are unavailing. First, as Defendants argue, they "conducted discovery in this case with an eye to the existing claim, not hypothetical ones." (Dkt. No. 87-8, at 15). They are thus not able to swiftly formulate a defense because they did not "have the opportunity to examine issues as the nature of Plaintiff's confinement; the individuals responsible for the conditions of his confinement . . . [or] the bases for continuing confinement." (*Id.*). Additionally, they have no opportunity to conduct discovery regarding whether Plaintiff exhausted his administrative remedies with respect to these claims, as required by the Prison Litigation Reform Act, and permitting an amendment now would compromise their ability to assert the affirmative defense of administrative exhaustion. (*Id.* at 15–16; Dkt. No. 87, at 17). Second, Plaintiff seems to conflate the individual Defendants being sued in this case, all of whom are DOCCS employees, and DOCSS itself. Plaintiff claims Defendants cannot claim surprise at his proposed amendment because "documents and evidence were created at Coxsackie during the period in question, which is relevant to these amended claims, and . . . this information was turned over to OSI." (Dkt. No. 55-1, at 38). The knowledge of DOCSS or OSI cannot be imputed to the individual Defendants in this litigation.

Accordingly, the Court denies Plaintiff's motion to amend under Rule 15(a)(2) of the Federal Rules of Civil Procedure.[9]

---

[9] Plaintiff also indicated that if his motion to amend under Rule 15(a)(2) was not granted, he "intends to move at the opening and/or close of trial to amend his complaint to conform with the facts pursuant to FRCP 15(b)." (Dkt. No.

## III.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that, as described above, the Defendants' motion in limine (Dkt. No. 72) is

**GRANTED in part and DENIED in part**; and it is further

**ORDERED** that, as described above, Plaintiff's motion in limine (Dkt. No. 55) is

**GRANTED in part and DENIED in part**; and it is further

**ORDERED** that, as described above, Plaintiff's motion for sanctions (Dkt. No. 55) is

**DENIED**; and it is further

**ORDERED** that, as described above, Plaintiff's motion to amend (Dkt. No. 55) is

**DENIED**.

**IT IS SO ORDERED.**

Dated: January 23, 2020
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

55-1, at 38). As Defendants argue, this motion is premature. (Dkt. No. 87-8, at 16). Rule 15(b) of the Federal Rules of Civil Procedure only applies, as indicated by its title, "during and after trial." Moreover, the Court notes that a motion under Fed. R. Civ. P. 15(b) to amend the pleadings after trial should only be granted "if the party against whom the amendment is offered will not be prejudiced by the amendment." *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94 (2d Cir. 2000) (quoting *Hillburn v. Maher*, 795 F.2d 252, 264 (2d Cir. 1986).